# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re,<br><br>Genesis Press, Inc.,<br><br><br>Debtor(s). | C/A No. 13-01376-HB<br><br>Chapter 7 |
| John K Fort,<br><br><br>Plaintiff(s),<br><br>v.<br><br>Larry Kudeviz,<br><br><br>Defendant(s). | Adv. Pro. No. 15-80024-HB |
| John K. Fort,<br><br><br>Plaintiff(s),<br><br>v.<br><br>Christopher Petrone,<br><br><br>Defendant(s). | Adv. Pro. No. 15-80025-HB |
| John K Fort,<br><br><br>Plaintiff(s),<br><br>v.<br><br>Bruce Kudeviz,<br><br><br>Defendant(s). | Adv. Pro. No. 15-80026-HB |
| John K. Fort,<br><br>Plaintiff(s), | Adv. Pro. No. 15-80027-HB |

v.

Michael Kudeviz,

Defendant(s).

**ORDER ON MOTIONS FOR
JUDGMENT ON THE PLEADINGS
AND SUMMARY JUDGMENT**

**THIS MATTER** came before the Court upon the Motions for Judgment on the Pleadings and Summary Judgment filed by Defendants Larry Kudeviz, Christopher Petrone, Bruce Kudeviz, and Michael Kudeviz (collectively, "Defendants").[1]  Plaintiff John K. Fort ("Trustee") filed an Objection.  This adversary proceeding concerns loans made to Debtor Genesis Press, Inc. ("Genesis") and Trustee's effort to avoid and recover alleged pre-petition overpayments of principal and/or interest on the loans made by Larry and Christopher and pre-petition overpayments of interest on the loans made by Bruce and Michael.  The Motions assert Defendants are entitled to a judgment on the pleadings and/or summary judgment because Trustee failed to adequately plead and prove fraud, Trustee's claims are barred by the statute of limitations, and Trustee's claims are unsubstantiated based on the evidence.  For the reasons set forth below, the Motions are denied.

## FACTS

The parties submitted, *inter alia*, copies of available loan documents and agreements, e-mail correspondence between Larry and a creditor of Genesis, a purchase and sale agreement for the purchase of a membership interest in Genesis, a complaint filed against Genesis in Florida, certain proofs of claims filed in Genesis' bankruptcy case, the recalculations of interest and principal owed conducted by Robert E. Faulkner, CPA ("Faulkner"), and deposition testimony from Larry, Christopher, Bruce, Michael, Faulkner,

---

[1] Identical Motions were filed in the above captioned adversary proceedings.  Due to the fact that some of the defendants share the same last name, they are referred to herein by their first names.

2

and Bryan Jeter.[2] Many of the relevant facts in the record are not in dispute, but the parties disagree as to the interpretation of the facts.

Genesis, a South Carolina corporation with its principal place of business in Greenville, South Carolina, was in the business of printing books primarily regarding healthcare and religion. Larry was the Chief Executive Officer and a shareholder; Bruce was the Chief Financial Officer and a shareholder; Michael was a shareholder; and Christopher was an employee.

Prior to 2008, Genesis experienced financial difficulties and Larry, Christopher, and Michael loaned money to Genesis. Pursuant to a memorandum drafted by Bruce and dated December 31, 2007 (the "2007 Memorandum"), Genesis recognized in writing that these loans existed and they were due fifteen (15) months from that date on March 31, 2009.[3] The 2007 Memorandum acknowledged that as of that date, Larry was owed $1,486,115.01, Christopher was owed $170,000.00, and Michael was owed $325,000.00.[4] The 2007 Memorandum also stated:

> [The lenders] agree[d] to waive any interest payments and thus will not accrue during this time period. Thirty days before March 31, 2009 the interest rate and payment plan will be negotiated in good faith reflecting the borrowing environment for an "arms length" transaction . . . . I also agree to a 30 day LIBOR as the interest rate for these Loans.

In a deposition, Bruce testified that the parties held a meeting in his office to discuss the terms of the 2007 Memorandum. He testified that his understanding of the 2007 Memorandum and

---

[2] No deposition testimony or description was provided to the Court from Defendants explaining who Bryan Jeter is or his involvement in this adversary proceeding.

[3] Each memorandum is signed by Larry, Christopher, and Michael as well as a witness whose signature is illegible. The validity of the 2007 Memorandum is not disputed.

[4] Although there were separate memoranda for Larry, Christopher, and Michael, they included identical language and only differed with regard to the amount and number of loans made by each defendant. Therefore, they are collectively referred to herein as the "2007 Memorandum."

3

the parties' intent was that Larry, Christopher, and Michael would *defer* collecting interest during the 15–month period therein, interest would accrue during that period at the LIBOR rate, and the parties were to meet later at the end of the 15-month period to discuss the repayment of interest and the interest going forward. However, that anticipated meeting never occurred. Michael's deposition testimony indicated that he did not believe the 2007 Memorandum waived his right to collect interest.

In 2008, Genesis' printing facility was damaged by a series of fires. Genesis notified its insurer, Hartford Casualty Insurance Company ("Hartford"), of its losses and Hartford began an investigation into the origin of the fires. Hartford ultimately refused to make payments to Genesis for its losses. As a result, Genesis filed a lawsuit against Hartford in June 2008 alleging it breached the parties' insurance contract and made a bad faith denial of the losses claimed. Larry, Christopher, and Bruce were then arrested and charged with arson, but the charges were later dismissed.

While the litigation with Hartford was pending, Genesis was in need of additional operating capital and sought commercial loans, but was unable to find a lender. As a result, Larry and Christopher loaned additional money to Genesis in various amounts and at different times in an effort to sustain the business through the litigation. Some, but not all, of these loans are evidenced by promissory notes. With regard to Larry, a total of $242,978.00 subsequently loaned is evidenced by promissory notes dated April 28, 2008 through October 15, 2009.[5] With regard to Chris, a total of $150,000.00 subsequently loaned is evidenced by promissory notes dated March 30, 2009 and August 7, 2009. These promissory notes provide

---

[5] A copy of the promissory note dated October 15, 2009, in the amount of $4,336.25 is not included in Trustee's Ex. H, which included copies promissory notes issued in favor of Larry, but is referenced in Trustee's recalculation of interest in Defendants' Ex. G.

4

in relevant part that the principal amount of the note will be repaid by Genesis "together with interest of [a certain] percent per annum, payable on demand."[6]  Trustee asserts Christopher made another loan on August 31, 2009, for $5,000.00 and Larry made additional loans in 2010 totaling $47,240.66 for which there are no writings or promissory notes.[7]

Bruce also made loans to Genesis while the litigation with Hartford was pending. Although Bruce's loans are not evidenced by any writing or promissory notes, it is undisputed that his loans were made in April 2010 in the principal amounts of $25,000 and $12,000.

On May 20, 2010, a jury returned a verdict awarding $14,500,000.00 in favor of Genesis against Hartford.  The case was appealed and settled shortly thereafter for $18,000,000.00.[8]  Of that amount, Larry received approximately $1,650,000.00, Christopher received approximately $2,400,000.00, and Bruce received approximately $1,950,000.00. Trustee has not raised any issues related to these distributions.

Genesis received approximately $12,000,000.00 from the settlement proceeds. Disbursements from this amount included paying vendors and satisfying outstanding loans, including those owed to Defendants.  On July 6, 2010, Genesis transferred a sum of $1,110,069.21 to Larry, a sum of $435,326.45 to Christopher, and a sum of $193,362.00 to Bruce.  On July 13, 2010, Genesis transferred a sum of $390,010.00 to Michael.

At that time, Genesis was indebted to the following creditors whose debts were not satisfied: (1) the Internal Revenue Service ("IRS") in the amount of $21,737.46; (2) Realty

---

[6] All of the promissory notes provided for an interest rate of 10.00% except the promissory note executed in favor of Larry dated January 13, 2009, which provides for an interest rate of 16.99%.
[7] This summary concerns only the loans subject to the instant Motions and does not differentiate the loans made by Larry to Genesis with funds borrowed from others.
[8] The math and circumstances behind a settlement for $18,000,000.00 on a $14,500,000.00 verdict was not explained.

5

Associates in the amount of $120,246.86; and (3) Barbara Levin in the amount of $863,658.41 (collectively, the "Existing Creditors").

Genesis filed a voluntary petition for Chapter 11 relief almost three years later on March 6, 2013. On June 11, 2013, the case was converted to Chapter 7 and Trustee was appointed.

The Existing Creditors filed proofs of claims in the bankruptcy case and those obligations remain unpaid. The IRS's proof of claim asserts an unsecured priority claim for unpaid taxes owed during the December 31, 2005 tax period and assessed on August 17, 2009.[9] The Realty Associates' proof of claim indicates it is owed for Genesis' failure to pay rent on real property located in Florida and other associated charges through the term of the lease, which expired on December 31, 2009. Lastly, Levin's proof of claim indicates amounts due pursuant to the agreement for the purchase of her late husband's ownership interest in Genesis ("Share Purchase Agreement").[10] The Share Purchase Agreement states that until Levin's debt is satisfied in full, Genesis "covenants and agrees that it shall promptly provide, upon demand by [Levin] from time to time, such financial statements and other documentation as reasonably requested including, but not limited to, notices, financial statements, certificates and other documentation[.]" On May 23, 2010, Levin e-mailed Larry to congratulate him on the favorable verdict against Hartford. Larry responded, informing Levin that some time would pass before they received any money, but he intended to resume making payments to her as soon as he received the funds, including stating, "I will never give up and rest assured you will be paid all that is owed—I still have a large uphill battle until we do get paid, but it

---

[9] The IRS's claim was amended on October 8, 2015, to include $15,000.00 owed as an unsecured priority claim for the unpaid taxes and $6,737.46 as a general unsecured claim for penalties on the priority portion of its claim.
[10] Executed April 30, 2004, as modified by the Master Note Modification and Ratification Agreement dated April 2007.

6

is not a battle I am afraid of." Levin responded, "[j]ust keep me informed and somehow we'll work things out." A review of the record indicates that the exact repayment terms anticipated by the parties at that time is unclear. Eventually, Levin sued Genesis in Florida on August 24, 2012, for breach of contract and specific performance, asking for money damages and that Genesis provide financial statements and other documentation as required by the agreement between the parties.

Trustee employed Faulkner, an accountant, to review Genesis' books and records and Trustee conducted discovery prior to these adversary proceedings. From information available, Faulkner reconstructed and recalculated the principal and interest due on the loans from Larry and Christopher and concluded that they were overpaid. Faulkner determined that based on his calculations, Larry was overpaid $154,822.00 for principal and $136,717.00 in interest, for a total of $291,539.00, and Christopher was overpaid $45,000.00 for principal and $23,471.45 in interest, for a total of $68,471.45. Generally, Faulkner's calculations differed from the actual payments made in July 2010 because he and Trustee concluded as follows: (1) pursuant to the 2007 Memorandum, Larry and Christopher waived the payment of interest on these loans for the 15-month period set forth therein and interest for these loans was incorrectly calculated by using a rate of 7.5% compounded annually when the 2007 Memorandum did not authorize compounding interest; (2) loans evidenced by promissory notes were incorrectly computed by compounding the interest instead of calculating simple interest;[11] (3) loans in which there was no note or writing documenting the applicable interest rate should have been repaid using South Carolina's legal interest rate; and (4) Larry and

---

[11] Simple interest is the payment of interest on principal only. Compound interest is the payment of interest on interest. *See e.g., Cunningham v. Johnson*, 241 F. App'x 913, 917 (4th Cir. 2007).

7

Christopher were paid more principal than they loaned Genesis at the time of the July 2010 transfers.

Faulkner also reconstructed and recalculated the interest due on the loans from Bruce and Michael and concluded that they were also overpaid. Faulkner determined that based on his calculations, Bruce was overpaid interest by $73,442.00, and Michael was overpaid interest by $34,090.00. Faulkner's calculations differed from the actual payments made to Bruce in July 2010 because he and Trustee concluded Bruce was repaid interest for his loans at exorbitant rates.[12] They assert Bruce should have been repaid with 7.5% interest because that rate is consistent with Genesis' calculations for repayment of loans of larger amounts. Faulkner's calculations differed from the actual payments made to Michael in July 2010 because he and Trustee concluded that, pursuant to the 2007 Memorandum, Michael waived the payment of interest on his loan for the 15-month period set forth therein and interest for that loan was incorrectly calculated by using a rate of 7.5% compounded annually when the 2007 Memorandum did not authorize compounding interest.

Based on these calculations and the information available to Trustee, he initiated the above captioned proceedings on February 27, 2015, seeking to recover some of the July 2010 transfers as alleged fraudulent transfers pursuant to 11 U.S.C. § 544(b)[13] and S.C. Code Ann. § 27-23-10(A) (the "Statute of Elizabeth").

## DISCUSSION AND CONCLUSIONS OF LAW

### I. JURISDICTION

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(a) and (b), 28 U.S.C. § 157, and Local Civ. Rule 83.IX.01 (D.S.C.). This matter is a core proceeding

---

[12] Bruce was repaid $75,000.00 for his $25,000.00 loan (an interest rate of 960%) and $36,000.00 for his $12,000.00 loan (an interest rate of 1,073%).

[13] Further reference to the Bankruptcy Code, 11 U.S.C. § 101 et seq., shall be by section number only.

under 28 U.S.C. § 157(b)(2)(A) and (H) and the parties have consented to this Court's entry of a final order.

### II. JUDGMENT ON THE PLEADINGS AND SUMMARY JUDGMENT STANDARDS

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).[14] "The standard of review for Rule 12(c) motions is the same as that under Rule 12(b)(6). . . . A Rule 12(c) motion tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact." *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014) (citing *Butler v. United States*, 702 F.3d 749, 751–52 (4th Cir. 2012)). "In resolving a motion pursuant to Rule 12(b)(6) or Rule 12(c), a district court cannot consider matters outside the pleadings without converting the motion into one for summary judgment." *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013) (citing Fed. R. Civ. P. 12(d)).

Fed. R. Civ. P. 56(a) provides "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[15] "In determining whether to grant a motion for Summary Judgment, the Court does not weigh the evidence; instead, it determines if there is a genuine issue of material fact for trial." *Hovis v. Ducate (In re Ducate)*, 355 B.R. 536, 539 (Bankr. D.S.C. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505 (1986)). "[S]ummary judgment should be granted in those cases in which it is perfectly clear that no genuine issue of material fact remains unresolved and inquiry into the facts is unnecessary to clarify the application of the law." *Hyman v. Ford Motor Co.*, 142 F. Supp. 2d 735, 738 (D.S.C. 2001). On summary judgment, the court must "view the facts and the

---

[14] Fed. R. Civ. P. 12(c) is made applicable to adversary proceedings pursuant to Fed. R. Bankr. P. 7012.
[15] Fed. R. Civ. P. 56 is made applicable to adversary proceedings pursuant to Fed. R. Bankr. P. 7056.

9

reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *United Rentals, Inc. v. Angell*, 592 F.3d 525, 530 (4th Cir. 2010).

If the movant provides evidence sufficient to establish its right to judgment, "the non-movant must proffer countering evidence sufficient to create a genuine factual dispute." *In re Proveaux*, C/A No. 07-05384-JW, slip op., at 5 (Bankr. D.S.C. Mar. 31, 2008) (quoting *In re Dig It, Inc.*, 129 B.R. 65, 66 (Bankr. D.S.C. 1991)). Rule 56 provides the following framework for the parties to support the motion for summary judgment or any challenge thereto:

> (1) *Supporting Factual Positions*. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

"A genuine issue of fact exists when there is sufficient evidence on which a reasonable jury could return a verdict for the non-moving party." *Orgain v. City of Salisbury, Md.*, 305 F. App'x 90, 97 (4th Cir. 2008); *see also Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985) *abrogated by Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S. Ct. 1775 (1989) ("Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice."). An issue of fact is considered material if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. Therefore, the non-movant "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986) (internal footnote and citations omitted). However,

"summary judgment is seldom appropriate in cases wherein particular states of mind are decisive as elements of a claim or defense. Resolution of questions of intent often depends upon the credibility of the witnesses, which can best be determined by the trier of facts after observation of the demeanor of the witnesses during direct and cross-examination." *Ross*, 759 F.2d at 364 (internal citations omitted); *see also Swanson v. Fields*, 814 F. Supp. 1007, 1010 (D. Kan. 1993), *aff'd*, 13 F.3d 407 (10th Cir. 1993) ("At the same time, a summary judgment motion is not the chance for a court to act as the jury and determine witness credibility, weigh the evidence, or decide upon competing inferences.").

### III.  TRUSTEE'S CLAIMS

Trustee seeks to avoid the transfers from Genesis to Defendants under the Statute of Elizabeth on the ground that they were constructively fraudulent because Defendants were substantially overpaid the principal and/or interest on their loans. Trustee asserts that any overpayment of principal and/or interest was not supported by valuable consideration.

The Statute of Elizabeth provides, in relevant part:

> Every gift, grant, alienation, bargain, transfer, and conveyance of lands, tenements, or hereditaments, goods and chattels or any of them . . . by writing or otherwise . . . which may be had or made to or for any intent or purpose to delay, hinder, or defraud creditors and others of their just and lawful actions, suits, debts, accounts, damages, penalties, and forfeitures must be deemed and taken . . . to be clearly and utterly void, frustrate and of no effect, any pretense, color, feigned consideration, expressing of use, or any other matter or thing to the contrary notwithstanding.

S.C. Code Ann. § 27-23-10(A).

"Section 544(b)(1) allows [Trustee] to 'step into the shoes' of creditors and assert their rights under the Statute of Elizabeth, provided there is a 'creditor with a valid unsecured claim in the bankruptcy case who could assert a claim to avoid the transfer.'" *In re Hanckel*, 512 B.R. 539, 546 (Bankr. D.S.C. 2014) (quoting *Hovis v. Ducate (In re Ducate)*, 369 B.R. 251,

11

258 (Bankr. D.S.C. 2007)). "The trustee's power to set aside transfers is for the benefit of all creditors." *Id.* (citing *Moore v. Bay*, 284 U.S. 4, 52 S. Ct. 3 (1931)). A transfer of cash may be within the purview of the Statute of Elizabeth. *See Fabrica la Estrella S.A. de C.V. v. Banda*, C/A No. 6:06–466–HMH, 2007 WL 39428 at *3 (D.S.C. Jan. 4, 2007) (voiding a cash transfer of $300,000.00 under the Statute of Elizabeth and holding that "[b]ased on the broad language and equitable nature of the Statute . . . the transfer of funds . . . is a 'transfer' under the broad and plain language of section 27–23–10(A)." (internal citation omitted)); *see PCS Nitrogen, Inc. v. Ross Dev. Corp.*, 127 F. Supp. 3d 568, 592–93 (D.S.C. 2015) ("the South Carolina Supreme Court does not view the listing of various specific types of property in the statute as prohibitive." (citing *Avery v. Wilson*, 47 S.C. 78, 25 S.E. 286, 294 (1896) (holding that the omission from the Statute of Elizabeth as then written "of the words 'goods and chattels' did not enable debtors to practice frauds as to 'goods and chattels' any more than they could as to any other property.")))

A transfer made without valuable consideration is a "voluntary conveyance" or gratuitous conveyance. *Royal Z Lanes, Inc. v. Collins Holding Corp.*, 337 S.C. 592, 594–95, 524 S.E.2d 621, 622 (1999). Under South Carolina law, a voluntary (or gratuitous) conveyance may be avoided without proving actual intent to defraud creditors. *In re Hanckel*, 512 B.R. 539, 549 (Bankr. D.S.C. 2014), *order aff'd, appeal dismissed sub nom. In re Richardson Miles Hanckel, III*, No. 2:14-CV-2898, 2015 WL 7251714 (D.S.C. Mar. 10, 2015) (citing *Royal Z Lanes, Inc.*, 337 S.C. at 595, 524 S.E.2d at 622). Trustee does not assert that actual fraud occurred here, rather he asserts that these were voluntary transfers made without valuable consideration.[16] "Under the constructive fraud theory, where a transfer was made

---

[16] Under the Statute of Elizabeth:

without valuable consideration being exchanged, no actual intent to hinder or defraud creditors has to be proven." *In re J.R. Deans Co., Inc.*, 249 B.R. 121, 130 (Bankr. D.S.C. 2000). Instead, as a matter of equity, such transfer will be avoided if Trustee can establish that:

> (1) the grantor was indebted to him at the time of the transfer; (2) the conveyance was voluntary; and (3) the grantor failed to retain sufficient property to pay the indebtedness to the plaintiff in full—not merely at the time of the transfer, but in the final analysis when the creditor seeks to collect his debt.

*In re Derivium Capital, LLC*, 380 B.R. 407, 420 (Bankr. D.S.C. 2006) (quoting *J.R. Deans Co.*, 249 B.R. at 130). This cause of action does not require Trustee to plead and prove actual intent to defraud and the other heightened requirements for pleading fraud under Fed. R. Civ. P. 9(b).

"Valuable consideration, in the sense of the law, may consist either in some right, interest, profit, or benefit, accruing to the one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by the other." *Hanckel*, 512 B.R. at 549 (quoting *Furman Univ. v. Waller*, 124 S.C. 68, 117 S.E. 356, 358 (1923)). On the other hand, "grossly inadequate consideration" has been defined as "a consideration so far short of the value of the property as to arouse a presumption in the mind that the person who takes that property takes it under some kind of secret trust." *McGhee v. Wells*, 57 S.C. 280, 35 S.E. 529, 531 (1900). In *Royal Z Lanes*, on a question certified by the Sixth Circuit Bankruptcy Appellate Panel, the South Carolina Supreme Court clarified that "grossly inadequate consideration" and "without

---

> [e]xisting creditors may avoid transfers under an actual fraudulent transfer theory or under a constructive fraud theory. Under an actual [fraudulent] transfer theory, the transfer will be set aside if the plaintiff can establish three things: "(1) the transfer was made by the grantor with the actual intent of defrauding his creditors; (2) the grantor was indebted at the time of the transfer; and (3) the grantor's intent is imputable to the grantee."

*In re J.R. Deans Co., Inc.*, 249 B.R. 121, 130 (Bankr. D.S.C. 2000) (quoting *Mathis v. Burton*, 319 S.C. 261, 264–65, 460 S.E.2d 406, 408 (Ct. App. 1995)).

13

valuable consideration" are not synonymous in the law. 337 S.C. at 595, 524 S.E.2d at 622 (quoting *Jeffords v. Berry*, 247 S.C. 347, 147 S.E.2d 415, 418 (1966)). "Grossly inadequate consideration does not render a conveyance voluntary; rather, the inadequacy of the consideration is treated as a 'badge of fraud,' and actual intent to defraud must be proven." *Hanckel*, 512 B.R. at 549 (citing *Royal Z Lanes*, 524 S.E.2d at 622–23).

### A. VOLUNTARY TRANSFER WITHOUT VALUABLE CONSIDERATION

#### 1. OVERPAYMENTS OF INTEREST—ALL DEFENDANTS

To determine whether Defendants were indeed overpaid interest, the Court must weigh the competing evidence to determine the appropriate calculation. Thereafter, the Court would need to consider the facts surrounding the transfers to determine whether any overpayment was a "voluntary" transfer under applicable law and made without any valuable consideration. The parties have different views of the evidence in the record and after a thorough search of the record and consideration of applicable law, the Court finds that genuine disputes of material fact remain. Weighing the evidence is not appropriate at the summary judgment stage and, therefore, Defendants' Motions must be denied as to any alleged overpayment of interest.

#### 2. OVERPAYMENT OF PRINCIPAL—LARRY AND CHRISTOPHER

Trustee's Complaint asserts Larry and Christopher were overpaid principal on the loans to Genesis at the time of the July 2010 transfers.[17] Christopher and Larry have shown no cause to grant judgment in their favor at this early stage as to any alleged overpayments of principal. The record supports a finding of overpayment of principal, or at the very least a

---

[17] At the hearing, counsel for Defendants conceded that Larry was overpaid principal by approximately $150,000.00 due to a mistake made by Bruce.

14

genuine dispute of material fact, and the next step is for the Court to weigh the evidence to determine if the transfers were "voluntary" and made without valuable consideration.

However, the Court notes that Larry and Christopher contend they were not overpaid principal because they continued to loan money to Genesis after the July 2010 transfers and those loans were never repaid. Accordingly, they claim any overpayment of principal owed would be offset by their subsequent loans to Genesis. This theory offers no effective defense to any overpayment of principal. *See In re Singh*, 434 B.R. 298, 308 (Bankr. E.D.N.Y. 2010) (Chapter 7 trustee sought to avoid the transfer of proceeds from the sale of real property to the defendant as a preferential or fraudulent transfer pursuant to §§ 547 and 548 and the court rejected the defendant's argument that even if the transfer was avoided as a fraudulent conveyance it should be setoff by subsequent loans he made to the debtor); *see also In re Acequia, Inc.*, 34 F.3d 800, 817 (9th Cir. 1994) (noting that "setoffs . . . do not apply to actions by the Trustee to recover fraudulent transfers"); *Bustamante v. Johnson (In re McConnell)*, 934 F.2d 662, 667 (5th Cir. 1991) ("Section 553(a) setoffs . . . do not apply to actions by the Trustee to recover fraudulent transfers: 'It would defeat the purpose of the Bankruptcy Act's provisions relating to fraudulent transfers to allow creditors to offset the value of the property thus transferred to them by the amount of their unsecured claim against the debtor.'" (quoting *Mack v. Newton*, 737 F.2d 1343, 1366 (5th Cir. 1984))); *In re Brooke Corp.*, 485 B.R. 650, 664 (Bankr. D. Kan. 2013) (recognizing that "[c]ourts generally hold that a prepetition claim against the debtor may not be set off against a trustee's preferential transfer or fraudulent transfer claim" and granting chapter 7 trustee's motion to dismiss defendant's counterclaim for setoff to be applied to any funds recovered under trustee's action for fraudulent conveyance pursuant to § 544 and state law (internal citations omitted)); *In re JSL Chem.*

15

*Corp.*, 424 B.R. 573, 583 (Bankr. S.D. Fla. 2010) (finding that a creditor may not defend against a preference action by asserting a right to setoff against the preference amount because allowing this would defeat the purpose of the Code's preference provisions); *In re Vaughan Co.*, C/A No. 10-10759, 2014 WL 1347481, at *4 (Bankr. D.N.M. Apr. 4, 2014) ("a fraudulent transfer claim cannot be offset against a general unsecured claim against the debtor"); 4 NORTON BANKR. L. & PRAC. 3d § 73:4 ("Defendants have from time to time argued that fraudulent transfer (or preference) liability should be reduced by a prepetition claim. The courts have mostly uniformly rejected that effort." (citing various cases)).[18] Therefore, Larry and Christopher's Motions must be denied as to any alleged overpayment of principal.

### B. STATUTE OF LIMITATIONS

The statute of limitations to bring a claim under the Statute of Elizabeth is three (3) years. S.C. Code Ann. § 15-3-530(7). Trustee is provided two (2) years from the order of relief to bring an action under § 544. 11 U.S.C. § 546(a)(1)(A). Defendants assert each of the Existing Creditors' claims under the Statute of Elizabeth are barred by the applicable statute of limitations. Thus, there are no creditors for whom Trustee can "step in the shoes of." *See Ducate*, 355 B.R. at 542–43.

According to Defendants, because Levin knew about the settlement proceeds as of May 2010, had she been reasonably diligent by requesting Genesis' financial information pursuant to the Share Purchase Agreement, she would have known about the transfers to

---

[18] Section 553 of the Code provides, in relevant part:
> [e]xcept as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a **mutual debt** owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case[.]

11 U.S.C. § 553(a) (emphasis added).

16

Defendants as early as when they occurred in July 2010.[19] Thus, they contend the three-year statute of limitations for Levin to bring a Statute of Elizabeth claim against them expired as early as July 2013, and well before Trustee's filing of the Complaint in February 2015.

> Under South Carolina law the applicable statute of limitations begins to run after two events occur. First, a cause or right of action to institute and maintain a lawsuit must have accrued. Second, the aggrieved party must have discovered or be charged with knowledge, after the exercise of due diligence, sufficient to put the creditor on notice of the fraud.

*Ducate*, 355 B.R. at 543 (internal citations omitted). "The standard is objective and the Court must look to whether the facts and circumstances would put a person of common knowledge and experience on notice that a claim may exist." *In re Wellman*, C/A No. 97-80304-W, 1998 WL 2016787, at *3 (Bankr. D.S.C. June 2, 1998) (citing *Burgess v. Am. Cancer Society*, 386 S.E.2d 798 (S.C. App. 1989); *Austin v. Conway Hosp., Inc.*, 356 S.E.2d 153 (S.C. App. 1987)). The facts in the record are not so clear as to support a finding on summary judgment that Levin or the other Existing Creditors discovered or should be charged with knowledge sufficient to put them on notice of any cause of action at a date early enough to bar Trustee's actions here.

Defendants further assert that Genesis' filing for bankruptcy relief did not toll the limitations period because such an action in state court would be properly brought against them individually, not Genesis. Trustee brings this action on behalf of Genesis and its creditors. 11 U.S.C. § 544(b). Applicable law requires only that "in order for the trustee to maintain a Statute of Elizabeth action there must be at least one creditor with a valid unsecured claim in the bankruptcy case." *Ducate*, 355 B.R. at 542–43. "As long as the applicable statute of limitation has not expired prior to the filing of the bankruptcy petition, the trustee may bring

---

[19] Defendants did not argue that Levin's proof of claim against Genesis is barred by the statute of limitations.

17

an avoidance action under the powers bestowed upon him by § 544(b) within the time constraints imposed by § 546(a) of the Bankruptcy Code." *In re Ambulatory Med. & Surgical Health Care, Inc.*, 187 B.R. 888, 901 (Bankr. W.D. Pa. 1995) (citing *In re Sverica Acquisition Corp, Inc.*, 179 B.R. 457, 466 (Bankr. E.D. Pa. 1995); *In re Topcor, Inc.*, 132 B.R. 119, 123–24 (Bankr. N.D. Tex. 1991); 4 *Collier on Bankruptcy* (15th ed. 1995) ¶ 544.03[2] at 544-22 – 544–23)); *see also* 11 U.S.C. § 546(a)(1)(A) (providing trustee two (2) years from the order of relief to bring an action under § 544).[20]

Genesis filed for bankruptcy relief in March 2013—approximately four months prior to the earliest time Defendants claim the statute of limitations could have expired in July 2013. Therefore, Defendants failed to show that the record supports summary judgment in their favor based on the statute of limitations.[21]

### C. WAIVER

Defendants argue Levin waived her right to initiate an action against them when she filed a lawsuit against Genesis for breach of the Share Purchase Agreement in Florida and did not also assert claims for recovery of fraudulent conveyances.

> Waiver may be found where a party voluntarily relinquishes a known right or claim . . . . A waiver also does not require consideration to be valid and may be either expressed or implied. Consequently, acts inconsistent with the continued assertion of a right, such as a failure to insist upon the right, may constitute waiver.

*In re Workman*, 373 B.R. 460, 465 (Bankr. D.S.C. 2007) (citing federal and South Carolina case law). Similarly, South Carolina law provides "[w]aiver is the voluntary and intentional

---

[20] Although Trustee argues the state statute of limitations was extended pursuant to § 108(a), that Code section is inapplicable in the instant matter because it pertains to actions brought by the trustee on behalf of the debtor—not the creditors.

[21] Due to this finding, addressing Defendants' argument as to the whether the IRS and/or The Realty Associates' claims are barred by the statute of limitations is not necessary. *See Ducate*, 355 B.R. at 542–43 ("[I]n order for the trustee to maintain a Statute of Elizabeth action there must be at least one creditor with a valid unsecured claim in the bankruptcy case.").

relinquishment of a known right. It may be implied from circumstances indicating an intent to waive. Acts that are inconsistent with the continued assertion of a right may also give rise to a waiver." *Provident Life & Accident Ins. Co. v. Driver*, 317 S.C. 471, 478–79, 451 S.E.2d 924, 929 (Ct. App. 1994) (internal citations omitted). "Generally, the party claiming waiver must show that the party against whom waiver is asserted possessed, at the time, actual or constructive knowledge of his rights or of all the material facts upon which they depended." *Janasik v. Fairway Oaks Villas Horizontal Prop. Regime*, 307 S.C. 339, 344, 415 S.E.2d 384, 387–88 (1992). The record submitted by Defendants in support of this theory is insufficient to find waiver by Levin as a matter of law at the summary judgment stage.

## CONCLUSION

**IT IS, THEREFORE, ORDERED** that Defendants Larry Kudeviz, Christopher Petrone, Bruce Kudeviz, and Michael Kudeviz's Motions for Judgment on the Pleadings and Summary Judgment are **denied**.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**05/27/2016**



US Bankruptcy Judge
District of South Carolina

Entered: 05/27/2016